UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD., <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> v. <br><br> VEEVA SYSTEMS INC., <br><br> Defendant/Counterclaim-Plaintiff. | Civil Action Nos. 17-177 & 19-15517 (JXN) (JSA) <br><br> **OPINION** <br><br> <u>FILED UNDER SEAL</u> |

**NEALS**, District Judge:

This matter comes before the Court on Defendant/Counterclaimant Veeva Systems, Inc.'s ("Veeva") appeal (ECF No. 539) from, and objections to, the June 2, 2023 Order (the "June 2 Order") entered by the Honorable Jessica S. Allen, U.S.M.J (ECF No. 536[1] in 2:17-cv-177; ECF No. 249 in 2:19-cv-15517). Plaintiffs/Counterclaim Defendant IQVIA Inc., and IMS Software Services, LTD. (together, "IQVIA") opposed. (ECF No. 547). Veeva replied. (ECF No. 553). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Veeva's appeal (ECF No. 539) is **GRANTED**, and this matter is **REMANDED** for further proceedings.

I.      <u>BACKGROUND AND PROCEDURAL HISTORY</u>

The parties have previously addressed and extensively briefed the discovery issues presented herein. Accordingly, the facts are largely undisputed for purposes of this appeal. Because they do not need to be reiterated in full, the relevant facts follow.

---

[1] This Opinion refers to the docket citations in Civil Action No. 2:17-cv-177, unless otherwise stated.

Veeva appeals the June 2 Order pursuant to Federal Rule of Civil Procedure 72 and Local Civil Rule 72.1 by disputing the sufficiency of IQVIA's January 2023 supplemental response to Interrogatory No. 14 in Veeva's interrogatories (Ex. A, Veeva's July 25, 2017 First Set of Rogs. (ECF No. 539-3) ("Veeva's Interrogatories") to Charles T. Graves's June 15, 2023 Declaration (ECF No. 539-2) (the "Graves Decl.")), following this Court's December 29, 2022 Opinion. (ECF No. 497) (the "Dec. 28 Opinion").[2]

### A. Veeva's Interrogatories to IQVIA

On July 25, 2017, Veeva served its First Set of Interrogatories on IQVIA. (Veeva's Rogs). Interrogatory No. 14 requests that IQVIA:

> IDENTIFY WITH PRECISION AND SPECIFICITY EACH AND EVERY ALLEGED TRADE SECRET of IMS that IMS contends VEEVA misappropriated.

(*Id.* at 15[3]).

In response to IQVIA's motion to compel discovery, Veeva cross-moved before the Special Master, the Honorable Dennis M. Cavanaugh, U.S.D.J. (Ret.) (the "Special Master"), for a protective order, seeking to "require IQVIA to [] answer Veeva's Interrogatory [No.] 14" by "providing a list of specific and discrete asserted trade secrets IQVIA contends Veeva misused . . . ." (Ex. 2 (ECF No. 195-1) to Joel C. Boehm's December 14, 2018 Declaration (ECF No. 195) at 6, 12). The Special Master denied Veeva's request, which it appealed to this Court.

### B. This Court's December 28, 2022 Opinion

This Court granted in part and denied in part Veeva's Special Master appeal. (*See, gen.,* Dec. 28 Op.). Pertinent here, the undersigned found that "IQVIA should be able to sufficiently

---

[2] The Court's Opinion is referenced in the docket as December 28, 2022, but dated December 29, 2022. Thus, the parties and Magistrate Judge Allen referenced the "Dec. 28 Opinion." For consistency, the Court similarly refers to the "Dec. 28 Opinion" herein.
[3] The Court refers to the ECF page numbers.

2

identify its trade secret(s) with reasonable particularity in response to Veeva's Interrogatory No. 14" to "put Veeva on notice of the nature of its claims and enable the Court to determine the proper scope of discovery and focus on discovery central to the parties' claims and defenses." (*Id.* at 21).[4] As to Veeva's Interrogatories 33 and 35, IQVIA was directed to "fully respond, with precision and specificity to" these interrogatories "in support of its misappropriation claims." (*Id.* at 21).

On January 12, 2023, IQVIA submitted Supplemental Responses and Objections to Veeva's Interrogatories, alleging "Veeva unlawfully accessed and misappropriated data and information from two types of market research offerings that IQVIA markets and sells to clients under internal use license agreements[,]" which are "Healthcare Professional and Organizational Data;" and "(2) Sub-National Information . . . ." ((Ex. B, IQVIA's Jan. 12, 2023 Suppl. Resps. and Objs. to the Graves Decl. at 3 ("IQVIA's Suppl. Resp.") (ECF No. 540)) (emphasis removed). On January 25, 2023, Veeva filed a letter asserting "IQVIA still has not identified its alleged trade secrets, in contravention of the Court's December 2[8], 2022, Order." (ECF No. 508 at 1) (emphasis removed).

On January 31, 2023, Magistrate Judge Allen ordered that the parties meet and confer regarding IQVIA's Suppl. Resp. and submit appropriate letters should they fail to resolve their issues. (ECF No. 515 at 2 ¶ 2). Both Veeva and IQVIA filed letters on February 8, 2023. (ECF Nos. 518-19). In its letter, Veeva reiterated that IQVIA "still does not identify the *specific* data records, fields, and elements that it believes Veeva misappropriated . . . ." (ECF No. 518 at 1). In turn, IQVIA represented that it has "specifically identified its trade secrets, and detailed Veeva's misuse of them, in its 112-page Supplemental Responses to Veeva's Interrogatory Nos. 14, 33, and 35." (ECF No. 519 at 1) (citation omitted) (emphasis removed).[5]

---

[4] The Court's Order appears at ECF No. 498 (the "Dec. 28 Order").
[5] The parties filed additional papers concerning discovery and other aspects of the litigation. (ECF Nos. 529-32).

        **C.**      **Magistrate Judge Allen's June 2, 2023 Order**

On June 1, 2023, Magistrate Judge Allen held a status conference to address the parties' contentions. The Magistrate Judge's findings were memorialized in the June 2 Order, which provides in pertinent part:

> As per the Court's findings on the record, IQVIA has supplemented its responses to Veeva's Interrogatory Nos. 14, 33, and 35 in support of IQVIA's trade secret misappropriation claims with sufficient and reasonable particularity to put Veeva on notice of the nature of IQVIA's trade secret misappropriation claims in compliance with District Judge Neals's Opinion and Order dated December 28, 2022
> . . . .

(June 2 Ord. at 2 ¶ 1).

**II.**      **STANDARD OF REVIEW**

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A). To that end, a district court will only reverse a magistrate judge's decision if it is contrary to law or clearly erroneous. *Id*.; Fed. R. Civ. P. 72(a). "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law." *Marks v. Struble,* 347 F. Supp. 2d 136, 149 (D.N.J. 2004) (citation and internal quotations omitted). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied the applicable law." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.,* 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citation omitted).

A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573 (1985) (citation and quotations omitted). Under this standard, "[a] district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review."

4

*Andrews v. Goodyear Tire & Rubber Co., Inc.,* 191 F.R.D. 59, 68 (D.N.J. 2000) (citation omitted). A district court "will not reverse the magistrate judge's determination even if the court might have decided the matter differently." *Bowen v. Parking Auth. of City of Camden,* No. 00–5765, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002) (citation omitted).

Where an appeal seeks review of a matter within the purview of the magistrate judge, such as a discovery dispute, an even more deferential standard, the "abuse of discretion standard," must be applied. *See Kounelis v. Sherrer,* 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (When "a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion.") (citation omitted). Indeed, the Third Circuit analyzes magistrate judges' "discovery orders for [an] abuse of discretion." *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 138 (3d Cir. 2000) (citations omitted). An abuse of discretion occurs "when the judicial action is arbitrary, fanciful[,] or unreasonable," which means "no reasonable [person] would take the view adopted by the trial court." *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.,* 540 F.2d 102, 115 (3d Cir. 1976) (in banc). "If reasonable [persons] could differ as to the propriety of the action[,]" however, "the trial court abused its discretion." (*Ibid.*).

Here, the parties dispute the relevant standard to be applied. Veeva argues that the June 2 Order should be analyzed under a clearly erroneous standard. (Veeva's brief (ECF No. 539-1) ("Veeva's Br.") at 12-13). IQVIA argues for the application of an abuse of discretion standard. (IQVIA's Mem. of Law (ECF No. 547) (the "Mem. of Law") at 15-16). The Court finds that the June 2 Order meets both the clearly erroneous and the abuse of discretion standards but directs further proceedings to clarify the responsiveness of IQVIA's Supplemental Responses.

5

**III.     DISCUSSION**

Veeva contends that it was clear error to allow a response that did not "divulge[e] the information comprising each separate alleged trade secret or the content of each alleged trade secret[,]" which "prejudices Veeva's ability to prove the defense of independent derivation." (Veeva's Br. at 8).  In support, Veeva argues that the June 2 Order is "clearly erroneous, and should be reversed" because: (i) "IQVIA's January 2023 response does not purport to identify that which IQVIA alleges Veeva received and misappropriated[;]" (ii) IQVIA's "supplemental response—which commingles 'trade secrets' that it does not contend Veeva misused, in an undifferentiated narrative—does not satisfy Interrogatory No. 14, which calls for a list of trade secrets allegedly misappropriated, along with their contents[;]" and (iii) that it is an "error to permit" IQVIA's Suppl. Resp., which is "so generalized that it includes publicly available information," in violation of Third Circuit precedent in *Mallet &Co. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021).  (Veeva's Br. at 7-8).  There, the Third Circuit held that "[w]hen the breadth of a trade secret description is so far-reaching that it includes publicly available information" and "admitted industry knowledge, that information is not specific enough to be accorded trade secret status."  *Id.* at 384.

Further, that "[i]n response to Veeva's requests for trade-secret identification, IQVIA alleged Veeva misused some subset of its "data and information" from its OneKey, Xponent, and DDD products (which IQVIA calls "Market Research Offerings").  (ECF No. 518 at 2) (citation omitted).  Moreover, that "because IQVIA does not and cannot claim that Veeva stole its products in their entirety, it must identify the individual records it claims Veeva stole."  (*Id.* at 2-3).

In the Dec. 28 Opinion, this Court found that "IQVIA should be able to sufficiently identify its trade secret(s) with reasonable particularity in response to Veeva's Interrogatory No. 14[,]" which "will put Veeva on notice of the nature of its claims and enable the Court to determine the

proper scope of discovery and focus on discovery central to the parties claims and defenses." (Dec. 28 Op. at 21). Accordingly, the Court directed IQVIA to "supplement its responses to" Veeva's Interrogatory No. 14 "with sufficient and reasonable particularity to put Veeva on notice of the nature of" the claims. (Dec. 28 Ord. at 2).

At the June Hearing, Magistrate Judge Allen noted that in supplementing its discovery responses, "IQVIA state[d] that the two market research offerings and their outputs are the trade secrets." (June Hearing at T32:8-11). More specifically, that the following "data compilation[s]" are IQVIA's three trade secrets: (1) "OneKey[,]" which "is IQVIA's health care professional organizational data[;]" (2) "[]Xponent, which is IQVIA's Sub-National Information[;]" and (3) "DDD, which provides information within the United States about sales and sales outlets . . . ." (*Id.* at T32:13-19; T32:24-25; T33:4-8; T33:11-15). Also, that "the periodic data feeds" to clients are trade secrets. (*Id.* at T38:1-7). IQVIA further described its trade secrets as "downloads from [IQVIA's] database" that they give to clients, as well as "spreadsheet[s][,]" which IQVIA identified in page 5 of IQVIA's Suppl. Resp. (*Id.* at T38:7-14; T45:24-T46:15). An example of which was produced to Veeva in IQVIA's Suppl. Resp. (*Id.* at T38:15-T39:14).

As to individual records, IQVIA represented that it identified its trade secret as "the data compilation of all of those individual records, the doctor records, the hospital records, those physical records." (*Id.* at T33:21-T34:5). When asked by Magistrate Judge Allen "how could [Veeva] possibly be on notice of [] what the trade secret is and what they've misappropriated . . . without telling" Veeva "what those records are[,]" IQVIA clarified that it is "not claiming [that] the individual records" are trade secrets, but rather "the compilations." (*Id.* at T43:2-6; T45:9-10).

Ultimately, Magistrate Judge Allen found that under Fed. R. Civ. P. 26, as well as this Court's Dec. 28 Opinion, "IQVIA has complied with" the Dec. 28 Opinion "in that it has

7

supplemented its responses to Veeva Interrogatory" No. 14 "in support of IQVIA's trade secret misappropriation claims with sufficient and reasonable particularity to at least put Veeva on notice of the nature of its claims." (*Id.* at T83:4-11).

In reviewing IQVIA's Suppl. Resp., Magistrate Judge Allen correctly found that IQVIA identified the alleged trade secrets with "reasonable particularly in its responses to" Veeva's Interrogatories. *Hill v. Best Med. Int'l, Inc.*, No. 9-1194, 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010) (internal quotations omitted).  "Reasonable particularity has been defined as a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Hill*, 2010 WL 2546023 at *3 (citation and internal quotations omitted).  Here, Magistrate Judge Allen's colloquy with counsel at the June Hearing shows that the court was within its discretion in finding for IQVIA as to the identification of the alleged trade secrets. *See Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) ("Subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of the special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.") (citations and internal quotations omitted).

Therefore, the Court finds Veeva's reliance on *Mallet & Co., Inc.,* misplaced because it is factually and legally distinguishable.  In that case, the Third Circuit considered the relevant test to establish the right to a preliminary injunction based on an alleged trade secret, rather than a discovery motion concerning the production of relevant materials under Federal Rule of Civil Procedure 26. *Id.* at 380.  In vacating the District Court injunction, the Circuit Court found that the parties' "very general description of categories does not sufficiently identify the information it

8

claims as a trade secret, . . . and thus does not suffice to justify the sweeping injunction the District Court issued." *Id.* at 387. Here, IQVIA has identified specific data compilations that it claims as trade secrets rather than the "very general descriptions" involved in *Mallet*. For similar reasons, the Court does not find Veeva's other cases persuasive. (Veeva's Br. at 16-17).

Pertinent here, whether IQVIA has a protected trade secret is not currently before this Court. *See Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 347 (D. Del. 2012) (Where a party makes no effort to identify trade secrets in greater detail than "what is identified in its discovery responses, those responses are the focus of the Court's analysis as to the identification element" in a motion). To that end, Magistrate Judge Allen correctly noted that her role called for "determin[ing] whether or not [IQVIA] has sufficiently with reasonable particularity identified the trade secret" and "[n]ot whether or not" what IQVIA produced *is* a trade secret. (June Hearing at T55:16-19) (emphasis added). The Court also agrees that whether IQVIA "will be able to prove" its alleged trade secret "as a matter of law is a question for a different day." (*Id.* at T84:12-16).

Turning to Veeva's standard of review argument, Veeva asserts that the June 2 Order should be analyzed under a clearly erroneous standard because it was "not based on a clearly articulated principle." (Veeva's Br. at 12) (citations omitted). In finding IQVIA complied with the Dec. 28 Opinion, Magistrate Judge Allen relied on Fed. R. Civ. P. 26, which provides a "clearly articulated principle." *See Schroeder v. Boeing Comm'l Airplane Co.*, 123 F.R.D. 166, 169 (D.N.J. 1988) (finding Judge Simandle met the clearly erroneous standard because the court's decision "was based on the clearly articulated principle provided by Fed.R.Civ.P. 26(b)(4)(C)"). Thus, Magistrate Judge Allen did not err in the June 2 Order. *See Anderson,* 470 U.S. at 573 (noting "clearly erroneous" means that "a mistake has been committed" and the reviewing court may not

9

reverse findings because "it would have decided the case differently.") (citation and internal quotations omitted). The same is true under an abuse of discretion standard.

Where, as here, the Magistrate Judge ruled on a discovery motion (June Hearing at T83:4-11), and "applied the standard under Federal Rule of Civil Procedure 26[,]" courts in this District typically apply an abuse of discretion standard. *See Fagan v. Fischer*, No. 14-7013, 2018 WL 2859541, at *3 (D.N.J. June 11, 2018).[6] Under that standard, the June 2 Order can be overturned "when the judicial action is arbitrary, fanciful or unreasonable . . . ." *Anglin v. Anglin*, No. 16-4049, 2023 WL 5950396, at *2 (D.N.J. Sept. 13, 2023) (citation and internal quotations omitted).

Here, the June 2 Order meets the "abuse of discretion" standard because Magistrate Judge Allen's reasoning is neither "arbitrary, fanciful nor unreasonable." Indeed, Veeva does not argue that the June 2 Order is "arbitrary, fanciful or unreasonable." The Court also agrees with Magistrate Judge Allen that IQVIA has satisfied that portion of the Dec. 28 Opinion requiring that IQVIA sufficiently identify its trade secret with reasonable particularity in response to Veeva's Interrogatory No. 14. Succinctly, "specific combinations of healthcare information offered by IQVIA, namely, OneKey, DDD, and Xponent" that "are classic examples of trade secrets." (Mem. of Law at 17). This may be enough to establish a protectable trade secret (*Arconic Inc. v. Novelis Inc.*, No. 17-1434, 2020 WL 7247112, at *17 n.16 (W.D. Pa. Dec. 9, 2020)), but as Magistrate Judge Allen noted (June Hearing at T55:16-19), it was not her responsibility to determine so.

Therefore, Magistrate Judge Allen's June 2 Order, as to the identification of IQVIA's alleged trade secret, was neither clearly erroneous nor an abuse of discretion. However, this does not end the inquiry. Interrogatory 14 requested identification of "each and every alleged trade

---

[6] Veeva concedes that "discovery orders" like the June 2 Order, "are generally overturned only for an abuse of discretion" (Veeva's Br. at 12), requiring application of the abuse of discretion standard. *Frank v. Cty. of Hudson*, 924 F. Supp. 620, 623 (D.N.J. 1996) (citations omitted).

secret of IMS *that IMS contends VEEVA misappropriated*." (Veeva's Rogs at 15) (emphasis added). In response to Interrogatories 33 and 35, IQVIA was directed to "fully respond, with precision and specificity to" these interrogatories "in support of its misappropriation claims." (Dec. 28 Op. at 21). This was to put "Veeva on notice of the nature of its claims and enable the Court to determine the proper scope of discovery and focus on discovery central to the parties claims and defenses." (*Ibid.*).

Consequently, unless IQVIA claims that Veeva stole its data compilations in their entirety, it must identify the individual records it claims Veeva misappropriated and detail Veeva's misuse of them. This will determine the proper scope of discovery needed to support the parties' claims and defenses. Such an obligation exists irrespective of whether the specific records consisted of publicly available information, or the nonpublic information alleged to be the data compilations. (June Hearing at T85:22-T86:2).[7] If IQVIA has not met this discovery obligation, then it has not fully complied with the Dec. 28 Opinion.

Accordingly, Veeva's appeal is granted, and this matter is remanded to allow Magistrate Judge Allen to determine whether IQVIA has fully responded with precision and specificity to identify the individual records it claims Veeva misappropriated.

IV.     **CONCLUSION**

For the reasons set forth above, Veeva's appeal (ECF No. 539) is **GRANTED**, and this matter is **REMANDED** for further proceedings. An appropriate Order accompanies this Opinion.

DATED: March 31, 2024

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge

---

[7] The Court agrees with Magistrate Judge Allen's finding that IQVIA is "not required to identify the specific records that consisted of publicly available information" or the "nonpublic information…" it asserts trade secret protection, i.e., the data compilations, research offerings and their outputs. (June Hearing at T85:22-T86:2). To the degree however, that such information is alleged to be data that Veeva misappropriated, then its production is required.

11