<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IQVIA, INC. and IMS SOFTWARE SERVICES LIMITED,** <br><br> Plaintiffs-Counterclaim Defendants, <br><br> v. <br><br> **VEEVA SYSTEMS, INC.,** <br><br> Defendant-Counterclaim Plaintiff. | Civil Action Nos.: 17-00177 (JXN) (JSA) <br> 19-15517 (JXN) (JSA) <br><br><br> **<u>OPINION AND ORDER</u>** |

<u>**NEALS**</u>, District Judge

  IQVIA Inc. and IMS Software Services Limited (together, "IQVIA") and Veeva Systems, Inc. ("Veeva") are parties to two contentious lawsuits spanning years that involve alleged trade secret misappropriation and antitrust violations: *IQVIA v. Veeva*, 17-177 (JXN) (JSA) ("*IQVIA I*"), and (2) *IQVIA v. Veeva,* 19-15517 (JXN) (JSA) and *Veeva v. IQVIA*, 19-18558 (JXN) (JSA) (consolidated as "*IQVIA II*").[1] Before the Court are the parties' competing positions on whether bifurcation of the claims is appropriate for summary judgment motion practice and trial. (*IQVIA II,* ECF Nos. 280, 281.)

  For the reasons set forth below, and for good cause shown, the Court finds bifurcation is appropriate, and thus exercises its case management discretion to bifurcate IQVIA's trade secret misappropriation claims from Veeva's antitrust claims for motion practice and trial. Veeva's antitrust counterclaims in *IQVIA I,* and all of *IQVIA II*, shall be held in abeyance pending resolution

---

[1] *IQVIA I* consists of IQVIA's claims for trade secret misappropriation and Veeva's eleven (11) counterclaims alleging antitrust violations. *IQVIA II* is a declaration judgment action involving only antitrust claims.

of IQVIA's trade secret claims.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

IQVIA is engaged in the business of providing market research, analytics, technology, and services to the life sciences, medical device, and diagnostics and healthcare industries. *See IQVIA v. Veeva*, 2022 WL 17990836, at *1 (D.N.J. Dec. 29, 2022). Veeva is an information and technology services company and competitor of IQVIA. *Id.* IQVIA alleges that Veeva has misused and mishandled IQVIA's confidential and proprietary information, allegedly to develop and improve Veeva's own data and technology products and to assist in marketing and promoting Veeva's competing brand. *Id.* In contrast, Veeva contends that IQVIA's business practices violate the antitrust laws. *Id.*

After nearly seven years of litigation, the parties have agreed that fact and expert discovery in both cases is substantially complete. Accordingly, on February 6, 2024, the Undersigned held an in-person conference to address the most efficient way to conduct motion practice and trial. (ECF No. 575.)

At the February 6th conference, IQVIA represented that, although computer forensic discovery related to damages was outstanding and needed for trial, the trade secret misappropriation claims on liability are ripe for summary judgment motion practice. Likewise, Veeva represented that both cases can proceed to the summary judgment phase although some discovery appeals remain outstanding. (*See IQVIA II*, Transcript of February 6, 2024 Conference ("Tr.") at 23:1-25:18, ECF No. 279.) However, the parties disagreed on whether IQVIA's trade secret claims should proceed simultaneously with Veeva's antitrust claims. (*See* Tr. 26:3-28-2.)

---

[2] These cases have complex and expansive histories. The parties are familiar with the factual and procedural histories, which have been detailed in many prior opinions. The Court addresses only the relevant factual and procedural background necessary to resolve the present dispute.

IQVIA argued that the Court should bifurcate its trade secret claims from Veeva's antitrust counterclaims in *IQVIA I* and proceed to summary judgment and trial on those claims first, staying Veeva's antitrust counterclaims, as well as Veeva's claims in the *IQVIA II* declaratory judgment action. (*See* Tr. 27:8-36:4.) In contrast, Veeva argued that *IQVIA I* and *IQVIA II* should be consolidated, and that summary judgment and trial should proceed simultaneously on all issues in both cases. (*See* Tr. 36:8-41:22.) Given the differing views on how to proceed, the Undersigned directed the parties to submit their case management proposals for bifurcation and/or consolidation relating to dispositive motion practice and trial. (*See* Tr. 61:20-62:21.) The parties filed their competing proposals on February 13, 2024. (*See* ECF Nos. 280 (IQVIA), 281 (Veeva).)

In its proposal, IQVIA reiterates the same arguments in favor of bifurcation and staying Veeva's antitrust counterclaims in *IQVIA I* and all claims in *IQVIA II*. (ECF No. 280.) In support of its position, IQVIA contends that bifurcation and resolution of the trade secret claims is more efficient and in line with the case law favoring bifurcation of intellectual property ("IP") claims from antitrust claims and addressing the IP claims first. (*See id.* at 1 & n.3.) IQVIA continues that bifurcation will avoid jury confusion given the complexity associated with trying trade secret and antitrust claims together; cuts to the core of the parties' disputed issues; would narrow, eliminate, or clarify Veeva's antitrust claims; and presents the only realistic path to organized motion practice and a focused trial, given the expansive record before the Court and the scope of issues involved. (*See id.* at 2-8.) Finally, IQVIA argues that while some evidence and witnesses may overlap between the trade secret and antitrust claims, there are numerous distinct and highly complex antitrust issues that are not relevant to the trade secret claims and would inevitably cause problems for a jury and prejudice resolution of IQVIA's trade secret claims. (*Id.* at 5-6.)

Veeva counters that *IQVIA I* and *IQVIA II* should be consolidated for all purposes and that

3

all claims should be decided together on summary judgment and then tried together. (ECF No. 281.) Veeva contends that the bifurcation of IQVIA's trade secret claims would be prejudicial and delay the complete resolution of both cases because the parties' claims are entangled, and the witnesses and evidence at trial will overlap. (*Id.* at 1, 3-6.) Further, Veeva contends that not only would bifurcation delay the resolution of its antitrust claims, but the parties would be required to present twice the same evidence and witnesses, engage in multiple rounds of motion practice, and participate in two trials. (*See id.* at 3-6, 9.) Thus, according to Veeva, the most efficient and fair path is to consolidate *IQVIA I* and *IQVIA II* and resolve all claims and issues at once. (*Id.* at 10.)

## II.     DISCUSSION

Federal Rule of Civil Procedure 42(b) governs requests to bifurcate,[3] stating that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." *Id.* Under Rule 42(b), a district court has broad discretion in separating issues and claims as part of its wide discretion in trial and case management. *See Barr Labs, Inc. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir. 1992).

In intellectual property cases, most commonly patent cases, "experienced judges use bifurcation and trifurcation both to simplify the issues . . . and to maintain manageability of the volume and complexity of the evidence presented to the jury." *Ricoh Co., Ltd. v. Katun Corp.*, 2005 WL 6965048, at *1 (D.N.J. July 14, 2005) (bifurcating patent and antitrust claims); *see also Indivior Inc. v. Dr. Reddy's Labs SA,* 2020 WL 2139540, at *3 (D.N.J. May 5, 2020) (bifurcation of antitrust counterclaims appropriate); *Fresenius Kabi USA, LLC v. Fera Pharms., LLC*, 2017

---

[3] Requests to consolidate, as opposed to bifurcate, are governed by Federal Rule of Civil Procedure 42(a). Veeva acknowledges that its request for consolidation is essentially the opposite side of IQVIA's bifurcation argument and involves many of the same basic considerations. (*See* ECF No. 281 at 10 ("Consolidation of *IQVIA I* and *IQVIA II* is appropriate for the same reasons that bifurcation is not.").)

4

WL 2213123, at *5 (D.N.J. May 19, 2017) (same); *Otsuka Pharm. Co. v. Torrent Pharms., Ltd., Inc.*, 118 F. Supp. 3d 646, 660 (D.N.J. 2015) (same). The same approach has been applied in cases containing both trade secret and antitrust claims. *See Nasdaq Inc. v. Miami Int'l Holdings, Inc.*, 2023 WL 4740753, at *3 (D.N.J. July 25, 2023) (proceeding with trade secret claims and staying and bifurcating antitrust counterclaims). "In deciding whether to bifurcate, courts generally consider whether bifurcation will conserve judicial resources, improve the jury's comprehension of the issues, and avoid prejudice." *Indivior*, 2020 WL 2139540, at *3 (D.N.J. May 5, 2020) (citing *Ricoh*, 2005 WL 6965048, at *1). A party seeking to bifurcate claims bears the burden to show it is warranted. *See Depomed, Inc. v. Purdue Pharma, L.P.*, 2013 WL 6190380, at *7 (D.N.J. Nov. 26, 2013).

This Court concludes that IQVIA has met its burden of showing bifurcation of its trade secret claims is appropriate. Indeed, the Court finds that bifurcation of these claims would benefit any potential jury by improving the jury's understanding of the issues, avoid potential prejudice, expedite the proceedings, and serve the interests of justice and judicial economy.[4]

Turning first to jury issues, bifurcation would considerably benefit any jury. The parties concede and agree that the cases are complex. And given their expansive case histories spanning more than seven years and their voluminous records, it would be impractical to argue otherwise, particularly given the nature of the antitrust claims and the proofs associated with them. *See, e.g.*, *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1169 n.9 (2d Cir. 1979) (noting that "antitrust cases are notoriously lengthy and tortuously complex"). The reality is that the issues in these cases are not "as intuitive to the average reasonable juror as more common actions, such as actions for

---

[4] Because the Court concludes, for the reasons herein, that IQVIA has met its burden to show that bifurcation of its trade secrets claims is warranted, it correspondingly concludes, for the same reasons, that Veeva has not met its burden to show that consolidation of *IQVIA I* and *IQVIA II* is warranted. *See In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (party seeking consolidation bears burden to establish it is appropriate).

personal injury or breach of contract would be." *Ricoh*, 2005 WL 6965048, at *1.

Veeva argues that many of the same witnesses have knowledge allegedly relevant to both the trade secret and antitrust claims. (ECF No. 281 at 4-5.) This weighs against consolidation and in favor of bifurcation, however, because testimony from the same witnesses about distinctly different subjects and facts is likely to muddle the evidence presented and confuse the jury's consideration of the separate claims, defenses, and legal theories. Further, palpable logistical problems are presented when a juror must parse separate, complex testimony from the same witness relevant to one claim as opposed to another. Moreover, Veeva's antitrust claims are different in terms of the evidence and proofs involved. (*See* ECF No. 280 at 7-8.) The claims cover different products and time periods, different alleged markets, and potentially different conduct. (*Id.*) Asking a single jury to consider all the claims at once will very likely result in jury confusion and weighs strongly in favor of bifurcation.

As to prejudice, Veeva argues that it would be prejudiced by further delaying adjudication of the antitrust claims. (ECF No. 281 at 6.) Veeva also contends that it could be impeded in defending against the trade secret claims should it not be allowed to reference anticompetitive behavior in defense of IQVIA's trade secret claims. (*Id.* at 7.) This Court disagrees. While delay is not desirable or insignificant, no injunctive or emergent relief was ever sought in this case, and the Court has attempted to move this case through years of contentious discovery to a resolution on the merits. That said, any additional delay that would result from bifurcation does not outweigh the benefit to the Court (and jury) that would result from the focused and orderly presentation of evidence on the limited set of trade secret claims. *See, e.g.*, *Indivior*, 2020 WL 2139540, at *4 ("Courts in this District are not apt to deny bifurcation where prejudice is based upon the purported delay of adjudication."). Finally, Veeva's concern that it would not be able to introduce evidence

6

to defend against trade secret claims is unfounded and can be addressed, if necessary, through *in limine* motions. For these reasons, any claimed prejudice to Veeva is not a sufficient basis to deny bifurcation.

Finally, bifurcation would conserve court resources, further the interests of justice, and expedite the proceedings. All parties are eager to proceed to summary judgment and move the case forward, as is the Court. Limiting the initial summary judgment motion to the trade secret claims would narrow the record for review and allow the Court to promptly issue a decision. The Court notes, however, that the parties have diametrically different views on the remainder of the cases following the Court's decision on summary judgment: IQVIA contends that if it prevails on the trade secret claims, such a ruling will essentially eliminate Veeva's antitrust claims; Veeva contends its antitrust claims will proceed regardless of the outcome of the summary judgment motions on the trade secret claims. (ECF No. 280 at 9-10; ECF No. 281 at 8.) As a practical matter, the resolution of the trade secret claims would impact the antitrust claims. As such, this Court finds both party and court resources will be best conserved by first addressing the threshold issues surrounding the trade secret claims.

### III. CONCLUSION

For the foregoing reasons, IQVIA's request to bifurcate the trade secret claims is **GRANTED**, and Veeva's request to consolidate *IQVIA I* and *IQVIA II* is **DENIED**. The parties shall proceed to summary judgment on IQVIA's trade secret misappropriation claims and any related *Daubert* issues.

With respect to briefing the motions, to preclude piecemeal extensions of briefing and due to the extended schedule requested, the parties are directed to utilize the following procedure:

- serve, but not file, opening summary judgment and *Daubert* briefs by June 17, 2024;

7

- serve, but not file, briefs in opposition to summary judgment and/or *Daubert* motions by August 19, 2024; and

- serve, but not file, any reply papers on the opposing parties' motions by September 19, 2024.

Once all motion papers have been served, the parties shall, within five (5) days thereafter, file on the docket the moving papers, the opposition papers, and the reply papers simultaneously under separate docket entries. Opening and opposition summary judgment briefs are not to exceed forty (40) pages. Reply briefs shall not exceed twenty (20) pages. Any *Daubert* briefs shall be filed in accordance with the standing page limitations set forth in the Local Civil Rules. All briefs shall be presented in Times New Roman 12-point font, double-spaced, and with 1-inch margins.

**SO ORDERED**.

_____
**JULIEN XAVIER NEALS**
**United States District Judge**

**Dated: May 3, 2024**